IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRYSTAL L. RUSSELL,**

    **Plaintiff,**

vs.

    Civil Action 2:15-cv-88
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Crystal L. Russell, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I. BACKGROUND

Plaintiff filed her applications for benefits on April 27, 2011, alleging that she has been disabled since September 1, 2010, due to anxiety attacks, Bipolar disorder, Post-Traumatic Stress Disorder (PTSD), Obsessive Compulsive Disorder (OCD), multiple personalities, and

depression. (R. at 251-57, 258-63, 316.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Edmund E. Giorgione ("ALJ") held a hearing on July 24, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 50-80.) Lynne M. Kaufman, M.S., a vocational expert, also appeared and testified at the hearing. (R. at 80–88.) On August 30, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-39.) On November 11, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. Vocational Expert Testimony

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a cook's helper, medical cleaner and patient care assistant, waitress/server, and an appointment clerk. (R. at 81-82.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 82-83.) The record of the ALJ's exchange with the VE reads in relevant part:

> Q: Thank you. I'd like you to consider a hypothetical individual with the claimant's age, education, and work experience. This individual would have no exertional restrictions, but could only have occasional superficial contact with supervisors, coworkers, and the general public in a relatively static work environment with static work processes and procedures. This individual would be hesitant to ask questions or ask for help. I don't know if I have defined that vocationally sufficient? Would that individual be able to do claimant's past relevant work?
>
> A: I think you could do the cleaning job within the profile. I mean, as far as hesitancy to ask questions, the main issue I would see there is you know, is she going to not know how to do her work or you know, do it incorrectly. That could be

> problematic, but if it's not happening all the time and she's not proceeding with incorrect, you know, then she could do the cleaning job.

(R. at 82.) Based on Plaintiff's age, education, work experience, and the RFC ultimately determined by the ALJ, the VE testified that the hypothetical individual could perform Plaintiff's past work as a medical cleaner along with approximately 725,000 medium and light exertion, unskilled jobs in the national economy such as a cleaner, laundry worker, and a marker/ticketer. (*Id.*) The VE further testified that if Plaintiff were off task an additional 25% of the work day in additional to regularly scheduled breaks, she would not be able to sustain employment. (R. at 86.)

### III. THE ADMINISTRATIVE DECISION

On August 30, 2013, the ALJ issued his decision. (R. at 16-39.) The ALJ found that Plaintiff met the insured status requirements through June 30, 2016. At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity from October 2010 through December 2010 and beginning in April 2011. (R. at

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

21.) The ALJ found that Plaintiff had the severe combination of impairments of an affective disorder, an anxiety disorder, a personality disorder and a history of alcohol abuse in remission. (R. at 22.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] find[s] that the claimant has the residual functional capacity to perform a full range of work at all exertional levels without physical limitation or restriction. Mentally, the claimant retains the capacity to perform work activity involving no more than occasional superficial contact with co-workers supervisors and the general public. She is limited to a relatively static work environment with static work procedures and processes. She is hesitant to ask questions or ask for help.

(R. at 29.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a medical cleaner, as well as jobs that exist in significant numbers in the national economy. (R. at 35-38.) He concluded that Plaintiff, therefore, was not disabled under the Social Security Act. (R. at 39.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ used ambiguous language in determining Plaintiff's RFC that precludes use of the VE's testimony as substantial evidence in

5

support of the ALJ's finding at step five that Plaintiff can perform her relevant past work.  (ECF No. 12 at 16-19).  The Undersigned agrees.[2]

**A.  The ALJ's Hypothetical Question to the VE is Ambiguous**

During the administrative hearing, the ALJ used the language that would later become, almost verbatim, his RFC determination to formulate a hypothetical question in order to elicit the VE's testimony that would serve as substantial evidence in support of his determination that Plaintiff can perform her relevant past work.  (R. at 29, 35, 82.)  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform [the specified] work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  The ALJ's hypothetical question should present the vocational expert with the ALJ's assessment of what the claimant "can and cannot do."  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  The ALJ's hypothetical question should include "all of a claimant's limitations."  *Id*.

Plaintiff challenges the ALJ's hypothetical question and subsequent RFC determination as fatally ambiguous.  (ECF No. 16 at 16.)  According to Plaintiff, the language "relatively static" and "hesitant to ask questions" is unquantifiable and ambiguous.[3]  (*Id*.)  As a result,

---

[2]This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error.  The Court notes, however, Plaintiff's contention that the ALJ failed to properly evaluate the opinion evidence of record.  Yet, the Undersigned need not, and does not, resolve the alternative basis that Plaintiff asserts in support of reversal and remand.

[3]Defendant's Response does not directly address Plaintiff's allegation of ambiguity with respect to the words "relatively static."  The Undersigned notes that analysis of this claim is unnecessary because, as explained below, any error in this regard is harmless.

Plaintiff argues, the VE's response may not be used as substantial evidence supporting the ALJ's related residual functional capacity conclusions. (ECF No. 16 at 19.)

In contrast, Defendant argues that the VE sufficiently clarified the extent of Plaintiff's limitation for purposes of the hypothetical question when she responded, "as far as hesitancy to ask questions . . . if it's not happening *all the time* and she's not proceeding with incorrect, you know, then I think she could do the cleaning job." (ECF No. 17 at 18; R. at 82 (emphasis added).) What the VE meant by "all the time," however, is not sufficiently clear to remove the ambiguity from the ALJ's hypothetical question.

First, the word "hesitant" describes a characteristic or a trait, not a limitation. The answer to a hypothetical question that is not based on quantifiable limitations cannot serve as substantial evidence in support of an ALJ's conclusions because it does not "accurately portray" the claimants limitations. *Ealy,* 594 F.3d at 516. In the instant case, the term "hesitant" is susceptible to a number of meanings. It could, for instance, describe someone who always hesitates, at least initially, to ask for guidance but who always eventually asks for it in time to properly complete her work tasks. Alternatively, someone who never asks questions until it is too late to correctly complete her work tasks could also be described as "hesitant." Without more, a characteristic, such as "hesitant," inaccurately portrays a claimant's limitations precisely because it is not quantifiable.

Next, the phrase "all the time" is colloquial and subject to a spectrum of meanings. Some may define it as "continuously," although others might think it means merely "frequently" or "repeatedly." Christine Ammer, ed., THE AMERICAN HERITAGE DICTIONARY OF IDIOMS (Jan. 21, 2016), http://dictionary.reference.com/browse/all the time>. The VE's statement removes the

ambiguity from the ALJ's hypothetical question only if she means that Plaintiff would be unemployable if she *always* proceeds incorrectly in her work tasks without asking for guidance. As explained below, that interpretation is highly unlikely.  Ultimately, what the VE means by "all the time" is not determinable from the record.

Last, it is unlikely that the VE means that Plaintiff would be unemployable only if she proceeds incorrectly in her work tasks for failure to ask questions *literally* "all the time." Common sense instructs that employees who fail to seek proper guidance and, therefore, perform their work tasks incorrectly are unemployable well before that threshold is reached.  The VE, however, did not specify what that rate is, and the ALJ did not suggest a hypothetical rate in his question upon which the VE could validly opine.  The ALJ's ambiguous hypothetical question and the VE's equally ambiguous response deprive the Court of an opportunity for meaningful review of this issue.

Accordingly, the Undersigned finds that the VE's response to the ALJ's hypothetical question does not qualify as substantial evidence supporting the ALJ's RFC determination.  The ALJ, therefore, was not justified in relying on the VE's response in his related conclusions, even with the VE's attempted qualification.

**B. The ALJ's Ambiguous Hypothetical Question is Not Harmless Error**

The ALJ's use of an ambiguous hypothetical question in this case is not harmless.  An error is harmless only if remanding the matter to the agency "would be an idle and useless formality" because "there is [no] reason to believe that [it] might lead to a different result." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir. 2004)).

As noted above, the ALJ's use of the words "relatively static work environment," although arguably ambiguous, is harmless error. It appears from the administrative hearing transcript that, in his question to the VE, the ALJ fully described the hypothetical work environment. The ALJ posited a work environment with "only . . . occasional superficial contact" with others and "static work processes and procedures." (R. at 29.) The ALJ's question, therefore, contemplated a specific work environment, even if the ALJ conveyed that environment in language that was somewhat inartful. The words "relatively static" suggest a work environment that could, at times at least, be less static than the one actually described. The VE concluded that Plaintiff could perform her relevant prior work within the hypothetical limitations. If the VE based her response upon a hypothetical work environment less static than the one actually described, therefore, adjusting the hypothetical to make it reflect a completely static environment would not change the VE's conclusion. As a statement reflecting Plaintiff's limitations, then, the ALJ's description of a static work environment was actually favorable to Plaintiff. Accordingly, any error related to the ALJ's use of the word "relatively" is harmless.

Turning now to the ALJ's use of the word "hesitant," the Court is mindful that, in posing a hypothetical question, the erroneous use of a claimant's condition or characteristic instead of her limitation could be harmless in certain circumstances. As explained above, when the ALJ includes other sufficient information to define a claimant's limitation, the error would be harmless. Similarly, when the corresponding limitation is itself obvious, then the ALJ's error would likely be harmless. In the instant case, however, the limitation corresponding to Plaintiff's hesitancy to ask questions or ask for help is not obvious. Furthermore, the ALJ did not provide additional information that would have clarified Plaintiff's limitation with respect to

9

her hesitancy to ask questions. The VE recognized as much when, in response to the ALJ's hypothetical, she said that "as far as hesitancy to ask questions, the main issue I would see there is you know, is she going to not know how to do her work or you know, do it incorrectly." (R. at 82. ) In effect, the VE responded to one unknown variable with another. According to the VE, knowing the frequency that Plaintiff would, because of her hesitancy to ask questions, proceed in her work tasks incorrectly is necessary in order to answer the hypothetical question and, as explained above, is unknown. (*Id.*) The purpose of the hypothetical question, and the related RFC determination, is to quantify that kind of variable in order to reach a disability finding supported by substantial evidence. The record of substantial evidence, in turn, provides a basis for meaningful review when necessary. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d at 651. Here, the ALJ's ambiguous hypothetical question prevents that meaningful review.

Accordingly, the Undersigned finds that the ALJ's ambiguous hypothetical question and resulting erroneous RFC determination is not harmless.

## VI.  CONCLUSION

For the reasons explained above, the Undersigned finds the ALJ's hypothetical question to the VE ambiguous. Consequently, the Undersigned cannot conclude that the resulting RFC determination is supported by substantial evidence. Any error in this regard, therefore, is not harmless. It is, therefore, **RECOMMENDED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January XX, 2016          /s/ *Elizabeth A. Preston Deavers*
                                 ELIZABETH A. PRESTON DEAVERS
                                 UNITED STATES MAGISTRATE JUDGE